UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| NORBERT BERNHARD ROHE, and | ) | Case No. 09-48164-705 |
| MARY MARGARET ROHE, | ) | Judge Kathy A. Surratt-States |
| | ) | Chapter 7 |
| Debtors. | ) | |
| | ) | |
| SUN SECURITY BANK, | ) | **Adversary No. 10-4423-659** |
| | ) | |
| | ) | |
| Plaintiff, | ) | **PUBLISHED** |
| | ) | |
| -v- | ) | |
| | ) | |
| NORBERT BERNHARD ROHE, and | ) | |
| MARY MARGARET ROHE, | ) | |
| | ) | |
| Defendants. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is the Complaint filed against Debtors Norbert and Mary Rohe, Defendants' Answer to Plaintiff's Complaint, Plaintiff's Proposed Findings of Fact and Conclusions of Law, Plaintiff's Trial Brief,  Defendants' Brief, Findings of Fact and Conclusions of Law and Stipulation of Uncontested Facts.  A hearing was held on July 6, 2011, at which Plaintiff and Defendants were represented by counsel and Debtor/Defendant Norbert Rohe appeared in person. The matter was taken as submitted.  Upon consideration of the record as a whole, the Court resolves the matter as follows.

## FINDINGS OF FACT

Debtors Norbert Bernhard Rohe and Mary Margaret Rohe (hereinafter "Debtors") and Debtor Norbert Rohe's brother and sister-in-law, Gerald and Michelle Rohe (hereinafter "Gerald & Michelle"), operated numerous businesses including a real estate development business known as Meppen Group, Inc. and an investment business called Waterway Investments, LLC which primarily purchased marinas.  Debtor Norbert Rohe was the Vice President and Field Manager of

Meppen Group, Inc. From 2001 through 2006, Creditor Sun Security Bank made more than 40 loans to Debtors and entities controlled by Debtors and Gerald & Michelle, in a total amount of more than $13,000,000.00. Debtors personally guaranteed repayment of the various loans, though Debtor Norbert Rohe was rarely involved in the loan negotiations. Debtors and/or Debtors' corporate entities defaulted on one or several loans to Creditor Sun Security Bank. Creditor Sun Security Bank foreclosed on the collateral securing the loans. Debtors and Gerald & Michelle believed that they had claims against Creditor Sun Security Bank and it's Chairman and President, Elmer Austermann, in connection with the aforementioned loans and foreclosures.

Debtors filed their Voluntary Petition under Chapter 7 of the Bankruptcy Code on August 20, 2009. Debtors listed Creditor Sun Security Bank as an unsecured nonpriority creditor owed a combined amount of $536,000.00 on Debtors' Schedule F. Item 21 on Schedule B prompts Debtors to disclose "other contingent and unliquidated claims of every nature." Debtors disclosed at Item 21 on Schedule B "Lawsuit against Elmer Osterman[1] & Sun Security Bank; Debtors believe they hold lender liability claims against Mr. Osterman and Sun Security Bank." This claim was disclosed as a joint claim in an indeterminate amount. Creditor Sun Security Bank was served with notice of Debtors' bankruptcy case.

On September 22, 2009, Trustee Charles Riske (hereinafter "Trustee") was duly appointed as the Successor Chapter 7 Trustee. Creditor Sun Security Bank did not appear at Debtors' Section 341 Meeting of Creditors. On November 18, 2009, Debtors were granted a Discharge. On February 8, 2010, Trustee filed Application to Employ Joel D. Brett as Special Counsel "for the purpose of pursuing a claim against Elmer Osterman and Sun Security Bank". See Trustee's Application to Employ Special Counsel, ¶ 2. Trustee's Application to Employ Joel D. Brett as Special Counsel was granted on February 10, 2010.

---

[1]Debtors mistakenly referred to Elmer Austermann as Elmer Osterman.

On March 18, 2010, Attorney Joel D. Brett filed a lawsuit on Debtors' behalf captioned Meppen Group, Inc., et al. vs. Sun Security Bank, et al., Cause No. 1011-CV02307 in St. Charles County, Missouri in which Debtors assert claims for Fraudulent Misrepresentation, *Prima Facie* Tort and Breach of Fiduciary Duty in the amount of $2,500,000.00. Debtor Norbert Rohe's brother, Gerald Rohe, retained Attorney Joel D. Brett sometime in 1999 or 2000 to represent Meppin Group, Inc. Gerald Rohe testified that he never instructed Attorney Joel D. Brett to investigate Creditor Sun Security Bank but rather, he suggested that he believed Creditor Sun Security Bank was acting inappropriately. Creditor Sun Security Bank however identified correspondence between Gerald Rohe and Attorney Joel D. Brett which details alleged misconduct by Creditor Sun Security Bank. Moreover, Debtor Norbert Rohe testified that Attorney Joel D. Brett was retained in 2006 or 2007 to investigate any potential claim that Gerald & Michelle, Debtors and the companies they control may have against Creditor Sun Security Bank.

On September 28, 2010, Creditor Sun Security Bank filed this adversary to seek revocation of Debtors' discharge. Creditor Sun Security Bank argues that the disclosure made by Debtors on Schedule B was not complete, thorough or accurate so that Creditor Sun Security Bank would be able to judge the nature of Debtors' estate. Creditor Sun Security Bank also questions other disclosures and omissions on Debtors' Schedules. For example, Debtor Norbert Rohe states that he did not own any guns on the date of the Petition yet at the time of the hearing, Debtor Norbert Rohe owned two guns which he testified that he bought for his son and borrows from him. Further, at least one year prior to filing, Debtor Norbert Rohe gave his father five (5) cars between 2007 and 2008 in repayment of loans his father made to both Debtor Norbert Rohe and his brother, Gerald Rohe. Moreover, Debtor Norbert Rohe owned a jetski which was not disclosed on Debtors' Schedules. Debtor Norbert Rohe testified that he did not disclose the jetski because it is "worthless." Debtors argue that they made the required disclosures and Debtors cannot now be held accountable for Creditor Sun Security Bank's failure to prosecute whatever action Creditor Sun

-3-

Security Bank alleges it would have pursued.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334 (2010) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) (2010).  Venue is proper in this District under 28 U.S.C. § 1409(a) (2010).

## CONCLUSIONS OF LAW

Section 727(d)(1) states that:

> on request of ... a creditor...and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

11 U.S.C. § 727(d)(1) (2010).  Creditor must prove the elements of Section 727(d)(1) by a preponderance of the evidence.  *See Fokkena v. Peterson (In re Peterson),* 356 B.R. 468, 475 (Bankr. N.D. Iowa 2006)(citing *In re Sendecky,* 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002)).  A creditor must seek revocation of the discharge within one year after the discharge was granted. 11 U.S.C. § 727(e) (2010).  Revocation of discharge is construed strictly against the objecting party and liberally in favor of the debtor so as to encourage the spirt of a fresh start.  *See In re Jordan,* 521 F.3d 430, 433 (4th Cir. 2008); *In re Koss,* 403 B.R. 191, 211 (Bankr. D. Mass 2009).  All of the debtor's debts will be reinstated upon revocation of the discharge, not just the debt owed to the claimant.  *In re Cochard,* 177 B.R. 639, 642 (Bankr. E.D. Mo. 1995).

Revocation of discharge at the request of a creditor is proper where, before discharge, the creditor had no actual or potential knowledge of debtor's alleged fraud.  *Id.* at 643; *Mid-Tech Consulting, Inc. v. Swendra,* 938 F.2d 885, 888 (8th Cir. 1991); *Continental Builders v. McElmurry (In re McElmurry),* 23 B.R. 533, 535 (W.D. Mo. 1982); *West Suburban Bank of Darien v.*

-4-

*Arianoutsos (In re Arianoutsos),* 116 B.R. 116, 119 (Bankr. N.D. Ill. 1990).  "The burden is on the creditor to investigate diligently any possibly fraudulent conduct before discharge." *In re Richard,* 165 B.R. 642, 643-44 (Bankr. W.D. Ark. 1994)(citing *Mid-Tech Consulting, Inc.,* 938 F.2d at 888).

If the complaining creditor meets its burden of proof that creditor did not know and could not have discovered any facts regarding debtor's alleged fraud prior to the discharge, "the next step is for creditor to prove that debtor committed actual fraud in connection with filing for and obtaining discharge. If the creditor is able to overcome both hurdles, a revocation of debtor's discharge will be granted." *In re Cochard,* 177 B.R. at 643.

Creditor Sun Security Bank alleges that Debtors acted fraudulently because Creditor Sun Security Bank does not believe that Debtors' disclosure on Schedule B was sufficiently detailed. Creditor Sun Security Bank argues that the information provided was insufficient for Creditor Sun Security Bank to assess the nature of Debtors' estate.  Debtors disclosed that Creditor Sun Security Bank was a creditor owed a combined amount of $536,000.00.  Further, Debtors' disclosure on Schedule B was sufficiently detailed for Trustee to evaluate and proceeded to submit an Application to Employ Attorney Joel D. Brett to pursue Debtors' claims against Creditor Sun Security Bank. Debtors did not conceal their belief that a potential lawsuit against Creditor Sun Security Bank was an asset of Debtors' estate.  Any possible recovery from that lawsuit would be for the benefit of Debtors' estate.  And, unless the amount of recovery from that lawsuit is liquidated, it is in effect a contingent unliquidated claim in an *indeterminate* amount.  Debtors provided information as to their intent and belief, and it was thus Creditor Sun Security Bank's duty to further investigate and take whatever action it deemed appropriate prior to entry of discharge.  There was no fraud as to Debtors' disclosure of the potential lawsuit.

Creditor Sun Security Bank also elicited information which purported to demonstrate other inconsistencies in Debtors' Schedules, particularly, that Debtor Norbert Rohe now owns two guns whereas Schedule B does not list ownership of any guns, that Debtor Norbert Rohe transferred five

(5) cars to his father in satisfaction of a loan over one year before filing and that Debtors own a jetski which was not disclosed on Debtors' Schedules.  It is indeed fraudulent to undervalue or omit assets on the bankruptcy schedules, however, these facts alone without more are insufficient to warrant a Section 727(d)(1) denial of discharge.  Creditor Sun Security Bank has not met its burden of proof.

By separate order, judgment will be entered accordingly.

_Kathy A. Surratt - States_

KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED:  October 18, 2011
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Sun Security Bank
4700 Mid Rivers Mall Dr.
St. Peters, MO 63376

Marvin L Lindmark, III
SmithAmundsen, LLC
1475 Fairgrounds Road
Suite 102
St. Charles, MO 63301

Patrick M. Jones
SmithAmundsen, LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601

Norbert and Mary Rohe
712 Jacobs Crossing
St. Charles, MO 63304

John C. Maxwell
1112 1st Capitol Drive, Suite B
St. Charles, MO 63301

-6-